IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MARK J. RICKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-4093-SSA-CV-C-MJW |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Mark J. Rickerson seeks judicial review,[1] of a final administrative decision denying plaintiff disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., and Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a final decision of the Commissioner of the Social Security Administration under Title II. Section 1631(c)(3) of the Act and 42 U.S.C. § 1383(c)(3) provide for judicial review to the same extent as the Commissioner's final determination under section 205.

The parties' briefs are fully submitted, and an oral argument was held on May 8, 2012. The complete facts and arguments are presented in the parties' briefs and will not be repeated here.

**Standard of Review**

The Eighth Circuit has set forth the standard for the federal courts' judicial review of denial of benefits, as follows:

> Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether

---

[1] With the consent of the parties, this case was assigned to the United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(c).

existing evidence is substantial, we consider evidence that detracts from the
Commissioner's decision as well as evidence that supports it. As long as
substantial evidence in the record supports the Commissioner's decision, we may
not reverse it because substantial evidence exists in the record that would have
supported a contrary outcome or because we would have decided the case
differently.

Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). See Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995). To meet the statutory definition, "the claimant must show (1) that he has a medically determinable physical or mental impairment which will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is the result of his impairment." McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir. 1983).

When reviewing the record to determine if there is substantial evidence to support the administrative decision, the court considers the educational background, work history and present age of the claimant; subjective complaints of pain or other impairments; claimant's description of physical activities and capabilities; the medical opinions given by treating and examining physicians; the corroboration by third parties of claimant's impairments; and the testimony of vocational experts when based upon proper hypothetical questions that fairly set forth the claimant's impairments. McMillian, 697 F.2d at 221.

### Discussion

Plaintiff Mark J. Rickerson was born in 1965. Plaintiff has a high school education and two years vocational training. Plaintiff alleges he became disabled beginning June 15, 2004. Plaintiff's disability report alleges inability to work due to hearing loss, nerve damage in his back and shoulder and left ankle pain. Plaintiff has past relevant work as a baker's assistant and a well driller.

The Administrative Law Judge (ALJ) found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2007. The ALJ also found that plaintiff has not engaged in substantial gainful activity since 2000. The ALJ determined the evidence supported that plaintiff suffered from the severe impairments of profound sensorineural hearing loss. The ALJ found plaintiff's additional alleged impairments of back and shoulder

2

pain and left ankle pain to be nonsevere in nature. The ALJ determined that plaintiff's impairment or combination of impairments did not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that after consideration of the record as a whole, plaintiff retained the residual functional capacity (RFC) to perform medium work despite his impairments. The ALJ, however, noted limitations for plaintiff's hearing loss, finding that plaintiff would require jobs that have no verbal communication as an essential element of the job; and that the plaintiff could not tolerate exposure to workplace hazards and dangerous equipment. The ALJ found that plaintiff could do simple work activity. Plaintiff's past relevant work as a baker's assistant and assistant well driller was determined to be heavy exertion by the vocational expert and the ALJ, and therefore, it was determined that plaintiff could not do his past relevant work. The ALJ found that, despite inability to do past relevant work, plaintiff could do work which exists in substantial numbers in the national economy. The vocational expert listed jobs at the medium work exertional level that he stated required only minimal communication with a supervisor such as an assembly line worker on a production line, laundry folder/sorter and car detailer. The ALJ determined that, based on such ability to work, plaintiff was not disabled as defined by the Social Security Act from June15, 2004, through the date of the decision on September 25, 2009.

Plaintiff argues the ALJ erred in determining that plaintiff can do work which exists in substantial numbers in the national economy. Specifically, plaintiff argues that the vocational expert's testimony conflicted with the Dictionary of Occupational Titles (DOT). Plaintiff asserts that the only job that the vocational expert correctly referenced by number within the DOT was the laundry worker at 302.685-010. Plaintiff notes that this job requires an individual to be able to take instructions. Further, the jobs of automobile detailer and assembly line worker, noted by the vocational expert as jobs that the plaintiff could perform, also require an individual to take instructions when dealing with people. Plaintiff argues that the requirement to take instructions when dealing with people, found in all three jobs determined available to plaintiff by the vocational expert, is contrary to the ALJ's limitation that plaintiff could only work at a job where communication is not an essential part of the job performance.

Plaintiff also argues that when the vocational expert was asked by plaintiff's counsel whether plaintiff would have to converse with other people in order for him to learn how to do

these jobs, the vocational expert replied that generally someone like the plaintiff would require a job coach to assist the employer in teaching him how to do the job. The vocational expert testified that a job coach may be someone who is employed by a state or private agency who would be required to assist the plaintiff for up to three months until plaintiff's work was considered competent. Plaintiff argues that this is clearly outside the parameters of the DOT and, clearly, the vocational expert did not properly consider plaintiff's likely need for a job coach for a period of up to three months.

Defendant argues that the ALJ properly evaluated the credibility of plaintiff's subjective allegations and that at Step 5, the ALJ properly relied on the vocational expert's testimony in determining that plaintiff could work at the medium exertional level and that there were significant number of jobs in the national economy which plaintiff could perform.

Upon review, this Court finds that ALJ's decision that plaintiff is not disabled as defined under the Social Security Act is not supported by substantial evidence in the record. Rather, the record supports that plaintiff had a severe hearing impairment, which had deteriorated over time, and also had limited speech ability.

<u>ALJ erred in discounting credibility of plaintiff's hearing impairment and in determining plaintiff's RFC</u>**.**

Although determinations of credibility are typically for the ALJ to make, such determinations which are contrary to the substantial evidence of record, and not supported with good reasons, can be found by the court to be error. <u>See</u> <u>Boettcher v. Astrue</u>, 652 F.3d 860, 865 (8th Cir. 2011) (finding ALJ's credibility assessment was not supported by substantial evidence in the record); <u>Bowman v. Barnhart</u>, 310 F.3d 1080, 1083 (8th Cir.2002) (concluding the ALJ erred in discounting the claimant's allegations of disabling pain because the medical evidence did not support the ALJ's finding). Here the ALJ improperly discounted the abundance of evidence in the record showing that plaintiff's hearing loss was profound, was getting worse over time, and severely limited his ability to communicate.

The ALJ erred in discounting the medical evidence that clearly shows plaintiff has a severe hearing impairment and has corresponding speech limitations. <u>See</u> <u>Boettcher</u> at 866 (ALJ erred where improper weight was placed on medical opinions and conclusions of the physicians were misstated). Specifically, the ALJ erred in discounting the March 2007 audiology report

4

which indicates plaintiff had a decline in both pure tone thresholds and word recognition since 2004. The ALJ erred in discounting the June 2007 audiology report by an otolaryngologist which stated that plaintiff primarily used signing and lip reading for communication. The report further stated that plaintiff had a hearing aid, but this helped only with surrounding noises and was not helpful in understanding speech. The report's assessment was profound sensorineural hearing loss. The ALJ also erred in discounting the August 4, 2007 medical opinion of Dr. Zeimet, who evaluated plaintiff for the purpose of disability determinations. Dr. Zeimet specifically stated plaintiff was not able to communicate very well with him, noting plaintiff did not have a sign language interpreter with him. Dr. Zeimet noted plaintiff did make a good effort in the examination.

The ALJ also erred in discounting the opinion of another source, whose statements were consistent with the medical evidence. Under the Social Security regulations, licensed clinical social workers are not considered "acceptable medical sources" who can provide evidence to establish the existence of a medically determinable impairment, see 20 C.F.R. §§ 404.1513(a) and 416.913(a), but as "other medical sources," their opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, *3 (August 2006). Specifically, here, the ALJ erred in not properly considering the opinion of the licensed clinical social worker, who specialized in providing services to the deaf and hard of hearing and who had been working with plaintiff since October of 2006. This social worker stated plaintiff had bilateral hearing loss affecting his ability to clearly understand verbal communication. She stated plaintiff relied a great deal on lip reading and written communication, which limited his conversations and ability to obtain and maintain employment. The ALJ should have given some weight to this opinion because it was supported by the medical records and the record as a whole.

The ALJ's alternative reliance on an opinion by a state agency speech and language pathologist, who opined there was no explanation for the great decrease in plaintiff's hearing, was in error. The fact that the pathologist could not provide an explanation for the decrease in plaintiff's hearing over time does not negate the facts in the record that clearly show plaintiff had suffered a decrease in his hearing over time.

5

The ALJ's cite to emergency room visits at which plaintiff was able to function and receive care, also does not negate the credibility of plaintiff's complaints of hearing loss and related communication limitations. The ALJ's notation that medical records from emergency room visits didn't specifically indicate a communication problem does support a finding that plaintiff did not have significant limitations with his hearing and communication. In two of the visits, plaintiff was accompanied by someone who could interpret for him with sign language, and in another instance, plaintiff had the assistance of his girlfriend. As for the visit when plaintiff arrived alone, it was noted his family was later at his bedside. To the extent plaintiff was noted as obeying verbal commands, there is no dispute that plaintiff can read lips to help assist him in trying to understand and communicate with others. Here the Court finds that the conclusions reached by the ALJ in discounting plaintiff's credibility were based on unreasonable characterizations of the evidence, and therefore, were not substantially justified and did not have a reasonable basis in law or fact.

The ALJ erred at Step 5.

At Step 5, the ALJ is to determine whether the claimant can do any work considering his RFC, age, education and work experience. Here the ALJ determined that plaintiff could not do his past relevant work because it was too heavy of an exertional level given plaintiff's impairments. The ALJ posed a hypothetical to the vocational expert in order to determine the extent to which the limitations the ALJ found credible would impair plaintiff's ability to do a full range of medium work. The vocational expert testified that plaintiff would qualify for jobs requiring only minimal communication with the supervisors, such as assembly line worker on a production line, laundry extractor/folder/sorter and car detailer. The ALJ noted the vocational expert's testimony to be consistent with the information contained in the DOT.

Upon review, it is clear the vocational expert's testimony was in error. Not only were the citations to the DOT incorrect, but so was the finding that, despite plaintiff's limitations, he could communicate sufficiently in order to obtain and maintain a job as an assembly line worker, laundry worker or car detailer. The vocational expert's testimony that plaintiff would likely need a job coach in order to obtain employment and then successfully complete training for a period of up to three months, is not consistent with the job descriptions for the jobs which the vocational expert found plaintiff could perform. A vocational expert's testimony constitutes substantial

6

evidence only if it accounts for all of the plaintiff's impairments. Here the requirement for a job coach clearly was not accounted for. See Boettcher, 652 F.3d at 867. The vocational expert and ALJ's failures to consider the true consequences of plaintiff's impairments, specifically with regard to the likely need for a job coach, were error. Moreover, the vocational expert and ALJ did not provide information as to the process necessary for plaintiff to obtain such coach. The generalized statement that the job coach services were typically provided by some unidentified state or private agency lends little support for showing that plaintiff can maintain employment. There is not substantial evidence in the record to support that plaintiff, who has profound hearing loss and communication difficulties, can obtain competitive employment. The ALJ incorrectly determined that plaintiff was not disabled as defined under the Social Security Act.

## Conclusion

Although remand to the Commissioner for further proceedings is the normal remedy, remand is not necessary where the record overwhelmingly supports a finding of disability. See Taylor v. Chater, 118 F.3d 1274, 1279 (8th Cir. 1997). Here the Court finds that plaintiff's debilitating limitations related to his significant hearing loss and limited speech, as set forth in the record, would disqualify him from any work that exists in significant numbers in the national economy. It is, therefore,

ORDERED that the decision of the Commissioner is reversed and this case is remanded to the Commissioner with directions to compute and award benefits to plaintiff.

Dated this 16th day of May, 2012, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*

MATT J. WHITWORTH
United States Magistrate Judge